IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | Civil Action No. 1:10-cr-43 |
| v. | § | |
| | § | JUDGE RON CLARK |
| GARY ALLEN JOHNSON | § | |

## **MEMORANDUM ORDER**

Defendant Gary Allen Johnson pled guilty to one count of possession of materials involved in the sexual exploitation of minors in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). For the reasons stated on the record at the sentencing hearing, the court varied upward from the Guideline range and sentenced him to seventy months in prison. The court enters this Order to further address Mr. Johnson's argument that because Congress was involved in determining the applicable Guideline ranges, the provisions of the Sentencing Guidelines dealing with possession of child pornography are entitled to no consideration by the court.[1]

Mr. Johnson was charged on a one count Information after investigators found more than 500 images and 175 movies[2] of child pornography on his computer, obtained through a peer-to-

---

[1] The horrors of child pornography are well documented, and the court need not describe them here. *See, e.g., New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348 (1982); *United States v. Norris*, 159 F.3d 926 (5th Cir. 1998); *United States v. Paroline*, 672 F. Supp. 2d 781 (E.D. Tex. 2009). The images and videos in this case, as in many other cases, were shared with others via a peer-to-peer network and were available for any interested person to view. Mr. Johnson may not have created these images himself, but there is grave harm in their widespread viewing and dissemination, not just in their initial creation. Violation of these children occurs not only when the images are created, but every time they are viewed. The viewing and possession of child pornography is far from a victimless crime.

[2] A total of 275 of the images and 49 of the movies contained naming conventions consistent with child pornography in unallocated space, indicating that they were incomplete

1

peer file sharing network. Mr. Johnson admitted to searching for child pornography on the Internet, and using search terms such as "underage," "Lolita," and "PTHC," which he understood to mean "pre-teen hardcore." In Mr. Johnson's plea agreement, the parties stipulated that the images and movies recovered involved a prepubescent minor or minors who had not attained the age of 12 years old, and that the offense involved more than 600 images.

Mr. Johnson moved for a downward variance, arguing in large part that he was entitled to a variance because the Sentencing Guidelines for child pornography offenses are too harsh. He relied on an article which analyzed the history and evolution of the Sentencing Guidelines for child pornography offenses for the proposition that the Guideline ranges and commentary related to child pornography are entitled to neither respect nor deference. Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guideline* (Jan. 1, 2009), *available at* http://www.fd.org.

This article asserts that the Guidelines for possession of child pornography are fundamentally flawed because Congress supposedly ignored the decision of the Sentencing Guidelines Commission to adopt a base offense level of 10 in possession cases, and instead directed the Commission to increase the base level for possession from 10 to 13. The author also complains that Congress directed the Commission to add enhancements for, among other things, the number of items possessed. Some district courts have relied on the Stabenow article in adopting this line of reasoning, while at the same time providing a case-specific analysis of the reasons for departing or varying downward. *See, e.g., United States v. Phinney*, 599 F. Supp. 2d

---

downloads or had been previously deleted. The remaining 266 images and 117 movies of child pornography had been fully downloaded and were not deleted.

1037 (E.D. Wis. 2009); *United States v. Grober,* 595 F. Supp. 2d 382 (D.N.J. 2008); *United States v. Donaghy*, 2010 WL 2605375 (E.D. Wis. Jun. 24, 2010).

The Stabenow article may serve a useful purpose in suggesting that Congress and the Commission revisit these Guideline provisions. However, Mr. Johnson's argument that the article provides a basis for courts to reject the Guidelines out of hand misapprehends the authority delegated to the Commission, ignores the fundamental role and power of the legislative branch, and mistakes recent holdings of the Supreme Court.

First, the findings of the Sentencing Commission, as an advisory body, are not binding on Congress. *See, e.g., United States v. LaBonte*, 520 U.S. 751, 757, 117 S. Ct. 1673, 1677 (1997) ("Congress has delegated to the Commission 'significant discretion in formulating guidelines' for sentencing convicted federal offenders . . . Broad as that discretion may be, however, it must bow to the specific directives of Congress.") (quoting *Mistretta v. United States*, 488 U.S. 361, 377, 109 S. Ct. 647, 657-58 (1989)); *United States v. Evanouskas*, 2010 WL 2724406 at *1 (11th Cir. Jul. 12, 2010). Doubtless, many congressionally-created agencies and commissions would like to operate free from oversight or direction by Congress. That is simply not how it works.

Second, the Stabenow article ignores the difference between the power of Congress to authorize and approve the Guidelines, and the role of the courts in applying them. Not to belabor the obvious, but subject to constitutional limitations, Congress has the power to enact laws setting the sentences for violations of federal criminal law.[3] U.S. Const. art. I, § 1; *Mistretta*, 488 U.S. at 364, 109 S. Ct. at 650-51. It certainly has the power to establish guidelines for such

---

[3]There is no claim that the Guideline range in this case violates the "cruel and unusual" clause of the Eighth Amendment, or some other constitutional provision.

sentences. *United States v. White*, 869 F.2d 822, 825 (5th Cir. 1989) (citing *Lockett v. Ohio*, 438 U.S. 586, 603-04, 98 S. Ct. 2954, 2964-65) (1978)).

Nevertheless, the argument *de jour* in these cases is that the court should ignore this congressional power if a judge feels that a particular Guideline directed by Congress merely represents the "uninformed" view of one or a few members, and should therefore be rejected in favor of the "educated" conclusions of a qualified commission. Measured legal analysis does not consist of an attack on the motives, background, or expertise of members of Congress. Such an elitist approach does nothing to promote the rule of law, and ignores the fact that the committee system and the bicameral nature of Congress are designed to receive and process input from a far wider range of interested parties than typically appear before any district court.

In the past, valid concerns were raised about the effect of mandatory guidelines on judicial discretion. That issue has been dealt with. *See United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). It is clear that the Guidelines are just that—guidelines. They are "the starting point" of the analysis a court undertakes to achieve the congressional sentencing objectives set out in 18 U.S.C. § 3553. *Kimbrough v. United States*, 552 U.S. 85, 108, 128 S.Ct. 558, 574 (2007).

Mr. Johnson argues that *Kimbrough* stands for the proposition that a sentencing court may ignore the Guideline for a particular offense if the court feels that Congress interfered with the Sentencing Commission's determination of Guideline ranges. While the *Kimbrough* Court discussed the disparities caused by the crack-powder cocaine ratio in the Guidelines, the opinion also states that "closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guideline range 'fails properly to reflect

4

§3553(a) considerations' even in a mine-run case." *Id.* at 109, 128 S.Ct. at 575 (quoting *Rita v. United States*, 551 U.S. 338, 351, 127 S. Ct. 2456, 2465 (2007)).

Judicial discretion is not based upon the theory that the court is in a special position to correct or improve congressional enactments. Rather, judicial discretion is appropriate because, while Congress must make policy decisions that affect and promote a national system of justice, the sentencing court is familiar with the facts of the individual case, and has an opportunity to evaluate the Defendant in person. The court may, after considering the particular aspects of the case in light of the 18 U.S.C. § 3553 factors, decide to depart or vary from the Guidelines. *Id.* at 109, 128 S.Ct. at 574-75.

Gratuitous attacks on the Guidelines or Congress by a defendant for "policy reasons" add nothing to the analysis of a particular case, or to the law in general. Claiming that there is a disparity between the Guidelines sentence for a first-time offender who has visually raped numerous children and one who has possessed illegal drugs ignores congressional intent to "avoid unwarranted sentence disparities among defendants . . . guilty of *similar conduct*." 18 U.S.C. § 3553(a)(6) (emphasis added). A defendant seeking the benefit of a particular Guideline departure provision should present facts that support application of that provision. One requesting a variance should point to facts about the nature and circumstances of the offense, or the history and characteristics of a defendant, that indicate a sentence below the Guideline range will accomplish congressionally-mandated goals, such as providing just punishment, protecting the public from further crimes of a particular defendant, promoting respect for the law, and affording adequate deterrence to criminal conduct.

Each case is different, and the facts of any particular case may justify a departure or a variance upward or downward from the properly calculated Guideline range. However, the court rejects the argument that the Sentencing Guidelines applicable to possession of child pornography can be ignored or disparaged, simply because some writers or courts have concluded that Congress was involved in increasing those Guideline ranges.

So **ORDERED** and **SIGNED** this **12** day of **October, 2010.**

_____
Ron Clark, United States District Judge